UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>GARY WYCHE,<br><br>*Defendant.* | Case No. 89-cr-0036 (RCL) |

### MEMORANDUM OPINION

On October 18, 1989, defendant Gary Wyche, then thirty-five years old, was convicted of (1) conspiracy to distribute and to possess with intent to distribute cocaine and cocaine base, (2) conspiracy to carry and use firearms during and in relation to drug trafficking offenses, (3) use of juveniles in drug trafficking, (4) assault with a dangerous weapon, (5) use of a firearm in aid of drug trafficking, and (6) possession of a firearm by a felon. *United States v. Wyche*, 741 F.3d 1284, 1287 (D.C. Cir. 2014). Wyche was sentenced to life imprisonment plus five years, followed by ten years of supervised release. Def.'s Mot. to Reduce Sentence ("Def.'s Mot."), ECF No. 517. Wyche was also sentenced to twenty years by the State of Maryland, to be served consecutively. *Id.* at 2.

Over three decades later, now sixty-seven-year-old Wyche moves for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). *Id.* at 1. In support of his request, Wyche claims that the COVID-19 pandemic, his medical problems, age, and the sentencing disparities between him and his co-defendants amount to "extraordinary and compelling" circumstances justifying his release. *Id.* at 1. The government opposes Wyche's motion, arguing that Wyche would pose a danger to the community if released. Gov. Opp'n 16, ECF No. 521. Wyche timely replied. Def.'s Reply 1, ECF No. 523. Both parties also filed supplemental briefing to address the effects of the ongoing COVID-19 pandemic: the government argues that because Wyche is now fully

1

vaccinated, his risk of serious infection or death from COVID-19 is diminished. Gov. Suppl. Opp'n 1, ECF No. 533. Wyche, on the other hand, insists that the worsening of his health causes extraordinary and compelling circumstances to remain. Def.'s Suppl. Mot. 2, ECF No. 537-1. Upon consideration of the parties' filings, ECF Nos. 517, 521, 523, 533, 537-1, and the record herein, the Court will **DENY** Wyche's motion for compassionate release.

## I. BACKGROUND

### A. Facts & Procedural History

In the late 1980s, a large drug conspiracy operated in Washington, DC, importing cocaine base from New York City and distributing it in northeast Washington, DC. Gov. Opp'n 3 (citing *United States v. Harris*, 959 F.2d 246, 249 (D.C. Cir. 1992)). Michael Palmer led the conspiracy, assisted by Lamar Harris, Richard Smith, Donald Johnson, and defendant Wyche. *Id.* Beyond distribution, the conspirators used firearms both to intimidate others and to trade for drugs. *Id.* For the two to three years the conspiracy was in operation, they sold an estimated 100 kilograms to 200 kilograms of crack cocaine each week. Gov. Opp'n 4–5.

In 1989, Wyche was arrested and charged with numerous narcotics and firearm offenses for his involvement in the conspiracy. *Wyche*, 741 F.3d at 1287. Along with his co-conspirators, he was tried and ultimately convicted on six counts of a twenty-three count indictment. *Id.* The United States Probation Office prepared a presentence investigation report ("PSR") for the Court, which concluded that the conspiracy began in January 1987 with Palmer, Tony Flow, and Anthony Watson. *See* Presentence Investigation Report ("PSR") ¶ 9, ECF No. 461-2. According to the PSR, Wyche was Flow's right-hand man until Flow's death, after which Wyche continued his participation in the conspiracy until his arrest. PSR ¶¶ 13–14. Every two to three days, the conspiracy sold two pounds of cocaine base and transported around one pound of cocaine base

into DC. PSR ¶ 17. The United States Attorney's office reported that the operation distributed over 150 kilograms of cocaine base from just January 1987 to July 1988. *Id.*

At his sentencing hearing, the Court identified Wyche as a principal member of this conspiracy and a major participant in the entire operation. *Wyche*, 741 F.3d at 1288. Because the conspiracy distributed over 500 grams of cocaine base, the Court calculated Wyche's United States Sentencing Guidelines ("USSG") base offense level as a 36—the highest base offense level at that time. *Id.*; *see* PSR ¶ 34. The Court then added a three-level enhancement for Wyche's managerial role in the conspiracy, a two-level increase for the restraint of a victim during Wyche's involvement, and a two-level increase for the use of a firearm in aid of drug trafficking, raising the offense level to a 43. *Wyche*, 741 F.3d at 1288; *see* PSR ¶¶ 35–45. With Wyche's criminal history at a level V, the guideline range for Wyche was life imprisonment. *Wyche*, 741 F.3d at 1288; *see* PSR ¶¶ 57–65. The Court followed this guideline and sentenced Wyche to life in prison plus a five-year term for the unlawful use of a firearm in aid of drug trafficking. *See* J. 3, ECF No. 461-1.

Wyche appealed his convictions, and they were affirmed by the D.C. Circuit. *Wyche*, 741 F.3d at 1288 (citing *United States v. Harris*, 959 F.2d 246, 264 (D.C. Cir. 1992)). Still, the case was remanded to the Court for resentencing—the Circuit suspected that Wyche may have only been responsible for 250 grams of cocaine base, which would incur a lower base offense level. *Id.* The Circuit also found that the Court erred by imposing the two-level increase for possession of a firearm, though it affirmed the two other enhancements. *Id.* at 1288. On remand, a revised PSR concluded that the drug operation received at least 907.2 grams of cocaine base per week, which Wyche was responsible for as a member of the conspiracy. *Id.* at 1288–89. The Court again assigned Wyche the 36 base offense level and added the three-level and two-level enhancements,

3

resulting in a base offense level of 41. *Id.* Wyche was resentenced on January 12, 1993, to the same sentence—life plus five years. *Id.* at 1289. On Wyche's second appeal, the D.C. Circuit affirmed. *Id.*

In 2007, the United States Sentencing Commission ("Sentencing Commission") lowered several Guideline ranges for cocaine-base offenses. *Id.* The revision provided that an amount of cocaine base between 500 grams and 1.5 kilograms would produce a base offense level of 34 (not 36). *Id.* Wyche responded to this Guidelines change by moving for a sentence reduction pursuant to 18 U.S.C. § 3582(c)(2). ECF No. 320. Four years later, the Sentencing Guidelines were further amended—in 2011, that same 500 grams of cocaine base would only trigger a base offense level of 32. *Wyche*, 741 F.3d at 1289. Wyche again moved for resentencing under that amendment. ECF No. 337. But this Court ruled that Wyche was not eligible for a sentence reduction and denied both motions. ECF No. 381.

Wyche is currently imprisoned at USP Lewisburg and has completed thirty-two years of his life sentence. *See* Def,'s Mot. 2; Gov. Opp'n 8.

**B. Procedural History**

In his current motion, Wyche moves for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). Def.'s Mot 1. Wyche argues that the COVID-19 pandemic, coupled with his obesity, asthma, hypertension, prediabetes, age, and status as a cancer survivor, constitute extraordinary and compelling circumstances warranting his compassionate release. *Id.* at 6. He further argues that the sentencing disparities between him and his co-conspirators contribute to the existence of extraordinary and compelling circumstances. *Id.* at 12. Finally, Wyche claims that the relevant § 3553(a) factors support a sentence reduction, because he has strong community ties and poses no threat to the community. *Id.* at 25–30.

4

The government opposes Wyche's motion. ECF No. 521. It argues that no extraordinary and compelling reasons for compassionate release exist, Gov. Suppl. Opp'n 1, and that Wyche poses a danger to the community, Gov. Opp'n 16.

## II. LEGAL STANDARD

A defendant seeking compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A) bears the burden of establishing that he is eligible for a sentence reduction. *United States v. Jones*, 836 F.3d 896, 899 (8th Cir. 2016). To be eligible for a reduction, two threshold requirements must be met. First, the defendant must have exhausted his administrative remedies. 18 U.S.C. § 3582(c)(1)(A). This requires a showing that "defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf" or that 30 days have elapsed since "the receipt of such a request by the warden of the defendant's facility," whichever deadline is earlier. *Id.* Second, the defendant must show that "extraordinary and compelling reasons warrant" a reduction of his original sentence. 18 U.S.C. § 3582(c)(1)(A)(i).

If the Court finds that the defendant has met his burden of showing these two requirements, the Court has the discretion to "reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment)," after considering the relevant factors set forth in 18 U.S.C. § 3553(a). 18 U.S.C. § 3582(c)(1)(A).

## III. DISCUSSION

Although Wyche has exhausted his administrative remedies, he has failed to meet his burden of establishing "extraordinary and compelling" circumstances that would warrant a sentence reduction. 18 U.S.C. § 3582(c)(1)(A)(i). Accordingly, this Court must deny his motion

and need not examine the application of the § 3553(a) factors. The Court will address each of Wyche's purported "extraordinary and compelling" circumstances below.

### A. Wyche Has Exhausted His Administrative Remedies

Both parties agree that Wyche has exhausted his administrative remedies. *See* Def.'s Mot. 4; Gov. Opp'n 8. On April 23, 2020, Wyche sent a letter to USP Lewisburg's warden, requesting that the Bureau of Prisons ("BOP") file a motion to reduce his sentence, and grant him compassionate release on the grounds that his health conditions make him especially vulnerable during the COVID-19 pandemic. Def.'s Mot. 4. The warden denied Wyche's request on May 13, 2020. Gov. Opp'n 8. Accordingly, Wyche's motion is properly before the Court. 18 U.S.C. § 3582(c)(1)(A).

### B. Wyche Has Failed to Establish Extraordinary and Compelling Circumstances Warranting a Sentence Reduction Under 18 U.S.C. § 3582(c)(1)(A)(i).

Wyche argues that the COVID-19 pandemic in conjunction with his medical issues—obesity, asthma, hypertension, prediabetes, age, and his status as a cancer survivor—amount to extraordinary and compelling circumstances justifying a sentence reduction. Def.'s Mot. 6. Wyche also proffers the sentencing disparities between him and his co-defendants as additional extraordinary and compelling circumstances warranting compassionate release. *Id.* at 12. The Court finds both arguments unpersuasive.[1]

---

[1] It must first be noted that the Court rejects the government's argument that Wyche's motion fails because he did not include circumstances enumerated by the Sentencing Commission in policy statement USSG § 1B1.13. Gov. Opp'n 13. The policy statement is controlling *only* in situations where the motion for compassionate release is filed by the Bureau of Prisons, not by the defendant. *See United States v. Long*, 997 F.3d 342, 355 (D.C. Cir. 2021). Since Wyche filed this compassionate release motion himself, USSG § 1B.13 is not dispositive. ECF No. 517.

1. **The Risk Posed to Wyche by COVID-19 is Not "Extraordinary and Compelling."**

As the D.C. Circuit has recognized, COVID-19 is impacting the entire world, not just the prison population, and certainly not just USP Lewisburg. *See United States v. Jackson*, 26 F.4th 994, 1001–02 (D.C. Cir. 2022). The pandemic alone cannot serve as the basis for extraordinary and compelling circumstances. *Id.* (denying compassionate release because defendant "offered no real evidence that the presence of the disease was greater in his place of confinement than anywhere else").

Wyche attempts to transform the COVID-19 pandemic into an extraordinary and compelling circumstance by contending that his unique medical circumstances create an unduly risk of serious infection and even death. Def.'s Mot. 6. But the D.C. Circuit has recognized that medical conditions plaguing a large subset of the nation do not create extraordinary circumstances. *See Jackson*, 26 F.4th at 1002 (internal citations omitted) (noting that defendant's obesity did not make his COVID-19 risk extraordinary because the entire nation suffers from an obesity epidemic).

Like obesity and sleep apnea in *Jackson*, Wyche's medical conditions are not extraordinary. Asthma impacts approximately one in thirteen people in the United States. *Asthma Facts and Figures*, Asthma and Allergy Foundation of America, https://www.aafa.org/asthma-facts (last visited June 30, 2022). Over one in three people in the US have prediabetes. *Prediabetes— Your Chance to Prevent Type 2 Diabetes*, Centers for Disease Control and Prevention, https://www.cdc.gov/diabetes/basics/prediabetes.html (last visited June 30, 2022). There are over 3.1 million survivors of prostate cancer in the US today. *Prostate Cancer: Statistics*, Cancer.Net, https://www.cancer.net/cancer-types/prostate-cancer/statistics (last visited June 30, 2022). Almost half of all adults in the US have hypertension. *Estimated Hypertension Prevalence, Treatment, and*

*Control Among U.S. Adults*, Million Hearts: Centers for Disease Control and Prevention, https://millionhearts.hhs.gov/data-reports/hypertension-prevalence.html (last visited June 30, 2022). These conditions cannot create extraordinary and compelling circumstances for Wyche because they simply are not extraordinary.

Beyond the prevalence of these conditions, courts in this Circuit have refused to grant compassionate release motions for inmates who suffer from many of the same, or similar, illnesses that Wyche has. *See United States v. Edwards*, No. 21-3062, 2022 WL 1769144, at *1 (D.C. Cir. June 1, 2022) (affirming denial of compassionate release for a defendant who suffered from obesity and a lung injury); *Jackson*, 26 F.4th at 1001 (affirming denial of compassionate release for defendant suffering from obesity and sleep apnea). This Court itself has done the same. *See United States v. Winston*, No. 1:94-cr-296 (RCL), 2021 WL 2592959, at *2 (D.D.C. June 24, 2021) (denying compassionate release for defendant who suffered from hypertension and obesity); *United States v. Martinez*, No. 1:05-cr-445 (RCL), 2021 WL 2322456, at *1 (D.D.C. June 7, 2021) (denying compassionate release for defendant with a history of obesity, a chronic respiratory infection, and a history of serious lung infections); *United States v. Houston*, No. 10-cr-265 (RCL), 2021 WL 860260, at *3 (D.D.C. Mar. 8, 2021) (denying compassionate release for defendant with hypertension, an IVC filter, and only one fully functioning lung). Wyche's conditions are not meaningfully different.

Moreover, the Court is not convinced that the decline in Wyche's health is as extraordinary as alleged. In a supplement, Wyche emphasizes how his medical care classification has gone from Care Level 1 to Care Level 2; however, the highest level is Level 4, indicating that Level 2 is not particularly severe. Def.'s Suppl. 2; *Care Level Classification for Medical and Mental Health Conditions or Disabilities*, Fed. Bureau of Prisons (May 2019), *available at*

8

https://www.bop.gov/resources/pdfs/care_level_classification_guide.pdf. In fact, Care Level 2 is still only considered a "provisional care level," the same designation as Care Level 1. *Id.*

And while it is true that some courts have granted compassionate release due to the COVID-19 pandemic, the facts of those cases are starkly different from Wyche's. In some cases—pre-COVID-19 vaccinations—courts granted supervised release when prison inmates were physically unable to take required precautions to protect themselves. *See United States v. Zukerman*, 451 F. Supp. 3d 329, 335 (S.D.N.Y. 2020) (finding extraordinary and compelling circumstances for defendant imprisoned in a facility where social distancing was nearly impossible); *United States v. Perez*, 451 F. Supp. 3d 288, 293 (S.D.N.Y. 2020) (granting supervised release where defendant was confined to a tiny cell where social distancing was impossible). As the government explained, the situation at USP Lewisburg is more than distinguishable. Def.'s Mot. 9–12. Wyche's prison has implemented numerous measures to ensure that inmates and staff are able to protect themselves from the virus, including limiting group gathering, halting most travel, and suspending visits. *Id.* at 9–11.

Additionally, when an inmate is fully vaccinated against COVID-19, compassionate release motions are unlikely to be granted even when a defendant has underlying health conditions. *See United States v. Engles*, No. 19-cr-132 (JDB), 2022 WL 1062937, at *2 (D.D.C. Apr. 8, 2022) (denying compassionate release for 65-year-old defendant despite underlying conditions of diabetes, congestive heart failure, and hypertension because defendant was fully vaccinated against COVID-19); *United States v. Morales*, No. 06-cr-248 (JDB), 2021 WL 4622461, at *5 (D.D.C. Oct. 7, 2021) (finding that defendant's full vaccination status and prison efforts to mitigate COVID-19 risk outweighed any heightened risk to defendant from his diabetes and hypertension).

Wyche has received two doses of the Moderna COVID-19 vaccine and is fully vaccinated. Gov. Suppl. 1. Accordingly, the Court does not find that any of his medical risk-factors constitute extraordinary and compelling circumstances justifying his compassionate release. As the court in *Morales* noted, "it is no longer early in the pandemic," so the Court must consider how the COVID-19 risk posed by health conditions is greatly mitigated by the vaccines that we are fortunate to have now. *Morales*, 2021 WL 4622461, at *5. Even considering the alleged worsening of Wyche's health, Def.'s Suppl. 2–4, his full vaccination status precludes his conditions from constituting extraordinary and compelling circumstances because of how greatly his COVID-19 risk is alleviated. *Comparative Effectiveness of Moderna, Pfizer-BioNTech, and Janssen (Johnson & Johnson) Vaccines in Preventing COVID-19 Hospitalizations Among Adults Without Immunocompromising Conditions*, Centers for Disease Control and Prevention, https://www.cdc.gov/mmwr/volumes/70/wr/mm7038e1.htm (last visited June 8, 2022).

Beyond vaccination, Wyche has contracted and recovered from COVID-19 twice. Def.'s Suppl. 2. If an inmate has fully recovered from a past COVID-19 infection, it weighs strongly against finding current extraordinary and compelling circumstances. *See Winston*, 2021 WL 2592959, at *2 (denying compassionate release, partly because defendant had already contracted and fully recovered from COVID-19 without serious complications). Wyche tries to emphasize how although he has recovered, he may be suffering from residual health effects. Def.'s Suppl. 2. But non-life-threatening residual effects post-COVID-19 infection are not extraordinary and compelling circumstances. *See United States v. Perkins*, 857 F. App'x 663, 664 (D.C. Cir. 2021) (upholding a finding of no extraordinary and compelling circumstances for defendant experiencing long-term effects from a past COVID-19 infection). Therefore, despite the possibility that Wyche

is experiencing lingering effects from his COVID-19 infections, the Court does not find that there are extraordinary and compelling circumstances, especially considering his full vaccination status.

### 2. The Sentencing Disparities Between Wyche and His Co-Defendants Are Not "Extraordinary and Compelling."

Wyche next argues that the sentencing disparities between him and his co-defendants further contribute to extraordinary and compelling circumstances. Def.'s Mot. 12. Courts have granted compassionate release motions based on such sentencing disparities; however, doing so here would be inappropriate because of important factual differences in Wyche's case.

Wyche relies heavily on *United States v. Price*, where a fellow district court granted compassionate release to a defendant who was sentenced to life. 496 F. Supp. 3d 83, 87–88 (D.D.C. 2020). But the defendant in *Price* was originally sentenced by a reluctant sentencing court that was "deeply disturbed" to impose a "draconian" statutory mandatory minimum of life. *Id.* at 87. While the court did emphasize that there were unwarranted sentencing disparities between Price and his more culpable co-defendants, it was this egregious sentence for non-violent drug crimes that the court heavily relied on when finding extraordinary and compelling circumstances warranting release. *Id.* at 87–88. Unlike in *Price*, where the sentencing court admitted that the life sentence was unfair, there is no evidence suggesting that Wyche's life sentence was given reluctantly here. Compare *Price*, 496 F. Supp. 3d at 87 *with Wyche*, 741 F.3d at 1287–90.

Wyche emphasizes how Palmer, the leader of the drug ring, is the only codefendant other than Wyche still incarcerated. Def.'s Mot. 13. Harris, who was considered Palmer's right-hand man, was released from prison in 2012, and Smith, who was at the same level as Wyche in the conspiracy, was released in 2016. *Id.* All co-defendants were originally sentenced to life imprisonment for their participation in the conspiracy. *Id.*

11

But there are key differences between Wyche and Harris and Smith. As Wyche admits, Def.'s Mot. 14, both Harris and Smith received sentence reductions under the 18 U.S.C. § 3582(c)(2), which allows a court to modify "a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission." *See, e.g.,* ECF Nos. 298 & 316 (Lamar Harris's motion and supplement); ECF No. 302 (Richard Smith's motion). They did not receive compassionate release, nor did they receive sentences outside of the guidelines range originally. Instead, they received sentence reductions based on retroactive changes to the Sentencing Guidelines. Wyche's co-conspirators' sentence reductions under 18 U.S.C. § 3582(c)(2) are not an extraordinary and compelling circumstances warranting release.

The Court also believes it is worth noting that another court in this district has denied compassionate release because granting it would *create* sentencing disparities. *See United States v. Fields*, No. 19-cr-48 (PLF), 2021 WL 780738, at *4 (D.D.C. Mar. 1, 2021) (noting that if the court did not deny defendant's compassionate release motion, it would result in significant sentencing disparities between him and similarly situated defendants). Wyche was given a life sentence, and at age sixty-seven, there are presumably many more years to be served. Def.'s Mot. 1–2. It is possible that granting early release would similarly create sentencing disparities between Wyche and other similarly situated incarcerated defendants.

In total, the potential sentencing disparities here do not rise to an extraordinary and compelling circumstance warranting compassionate release.

*   *   *

Because neither Wyche's COVID-19 risk nor the alleged sentencing disparities between him and his co-defendants are extraordinary and compelling, it is unnecessary for the Court to analyze the factors set forth in 18 U.S.C. § 3553(a).

## IV. CONCLUSION

For the reasons explained above, Wyche's motion for compassionate release, ECF No. 517, will be **DENIED** by separate order.

Date: July _8_, 2022

Hon. Royce C. Lamberth
United States District Judge

13