## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA,**<br><br>v.<br><br>**GARY WYCHE,**<br><br>*Defendant.* | **Case No. 89-CR-36-RCL-5** |

### MEMORANDUM OPINION

In 1989, defendant Gary Wyche was sentenced to life in prison after a jury found him guilty of drug trafficking and firearms offenses stemming from his participation in a large-scale illegal drug operation operating in Washington, D.C. during the late 1980s. After serving approximately thirty years in prison, Mr. Wyche moved for a reduction in his sentence based on Section 404 of the First Step Act of 2018 ("First Step Act"), Pub. L. 115-391, § 404, 132 Stat. 5194. Section 404 allows courts to impose a reduced sentence "as if" the reduced crack cocaine penalties established by Sections 2 and 3 of the Fair Sentencing Act of 2010, Pub. L. 111-220, 124 Stat. 2372, had been in effect "at the time of the commission of the offense, not at the time of the original sentencing," *Concepcion v. United States*, 142 S. Ct. 2389, 2402 (2022). The government agrees with Mr. Wyche that he is eligible for relief under the First Step Act but urges the Court to exercise its discretion not to reduce Mr. Wyche's sentence.

After considering the parties' briefing, the applicable law, and the record therein, the Court will **GRANT IN PART** Mr. Wyche's motion. Mr. Wyche's sentence is reduced to 28 years' imprisonment. His motion is otherwise denied.

## I.     BACKGROUND

The factual and procedural background of this case has been described in detail in the previous opinions from this Court and the Circuit. *See United States v. Harris*, 959 F.2d 246 (D.C. Cir. 1992) (per curiam); *United States v. Wyche,* 741 F.3d 1284 (D.C. Cir. 2014); *United States v. Wyche*, No. 89-cr-0036 (RCL), 2022 WL 2643568, *1 (D.D.C. July 8, 2022). The Court includes below an overview of the relevant facts and procedural history for consideration of Mr. Wyche's motion.

In 1989, Mr. Wyche was arrested and charged with several narcotics and firearm offenses for his involvement in a large drug conspiracy operating in Washington, D.C., which imported cocaine base, also known as crack cocaine, from New York City and distributed it in northeast Washington. *See Wyche*, 741 F.3d at 1287. Along with his co-conspirators, he was tried and ultimately convicted on 6 counts: conspiracy to distribute and to possess with intent to distribute cocaine and cocaine base in violation of 21 U.S.C. §§ 841(a) & 846 (Count 1); conspiracy to carry and use firearms during and in relation to drug trafficking offenses in violation of 18 U.S.C. §§ 371, 924(c) (Count 3); use of juveniles in drug trafficking in violation of 21 U.S.C. § 845b (Count 4); assault with a dangerous weapon in violation of D.C. Code § 22–502 (Count 13); use of a firearm in aid of drug trafficking in violation of 18 U.S.C. § 924(c) (Count 14); and possession of a firearm by a felon in violation of 18 U.S.C. § 922(g) (Count 15). *Id.*

In preparation for sentencing, the United States Probation Office prepared a presentence investigation report ("PSR"). *Id.* Relying on trial testimony, the PSR concluded that the conspiracy began in January 1987 with Michael Palmer, Tony Flow, and Anthony Watson. *See* PSR, ECF No. 461-2, ¶ 9. According to the PSR, Mr. Wyche was Flow's right-hand man until Flow's death, after which Mr. Wyche continued his participation in the conspiracy until his

2

arrest. *Id.* ¶¶ 13–14. Every two to three days, the conspiracy sold two pounds of cocaine base and transported around one pound of cocaine base into Washington. *Id.* ¶ 17. The United States Attorney's office reported that the operation distributed over 150 kilograms of cocaine base from January 1987 to July 1988. *Id.*

At his sentencing hearing, the Court identified Mr. Wyche as a principal member of and major participant in the conspiracy. *See Wyche*, 741 F.3d at 1288. Because the conspiracy distributed over 500 grams of cocaine base, the Court calculated Mr. Wyche's United States Sentencing Guidelines ("U.S.S.G.") base offense level as 36—the highest base offense level at that time. *Id.* The Court then added a three-level enhancement for Mr. Wyche's managerial role in the conspiracy, a two-level increase for the restraint of a victim, and a two-level enhancement for the use of a firearm in aid of drug trafficking, raising his total offense level to 43. *Id.* With Mr. Wyche's criminal history category of V, the guideline sentence range for him was life imprisonment. *Id.* The Court followed this guideline and sentenced Mr. Wyche to life in prison plus a 5-year term for the unlawful use of a firearm in aid of drug trafficking, and 10 years of supervised release. *See* J., ECF No. 461-1, at 3.

Mr. Wyche's convictions were affirmed by the Circuit. *See Harris*, 959 F.2d at 264. Still, the case was remanded for resentencing in part to reassess the drug quantity for which Mr. Wyche was responsible. *See Wyche*, 741 F.3d at 1288. On remand, a revised PSR concluded that, during the period that Mr. Wyche was a member of the conspiracy, the drug operation received at least 907.2 grams of cocaine base per week, or a total of approximately 31 kilograms. *Id.* at 1288–89. Based on this quantity, the Court again assigned Wyche a base offense level of 36, added the appropriate three-level and two-level enhancements, and resentenced him to the same

sentence—life plus 5 years, with 10 years of supervised release.[1] *Id.* at 1289. The D.C. Circuit affirmed the sentence after Mr. Wyche's appeal. *Id.* Mr. Wyche has filed several collateral attacks to his conviction in the intervening years, none of which have been successful. *See* Gov't Opp'n to Def.'s 2d Suppl. Mot., ECF No. 532, at 4–6.

In 2019, Mr. Wyche filed a *pro se* motion and supplement asking this Court to reduce his sentence pursuant to Section 404 of the First Step Act. *See* Def's Mot., ECF. No. 476; Def.'s Suppl. Mot., ECF No. 486. In early 2021, this Court appointed the Office of the Federal Public Defender to represent the defendant in litigating his First Step Act motion. *See* Order (Jan. 14, 2021), ECF No. 524. Mr. Wyche, through counsel, filed another supplement to his pending First Step Act motion. Def.'s 2d Suppl. Mot., ECF No. 528. Around the same time, Mr. Wyche, through different counsel, filed a motion for compassionate release. *See* Def.'s Compassionate Release Mot., ECF No. 517 [hereinafter "Def.'s CR Mot."]. Because of the overlapping nature of the arguments and in analysis between Mr. Wyche's compassionate release and First Step Act motions, Mr. Wyche incorporates the compassionate release motion and his corresponding reply into this First Step Act submissions filed through counsel. *See* Def.'s 2d Suppl. Mot. at 1; Def.'s CR Mot.; Def.'s Reply to Gov't Opp'n to Def.'s CR Mot., ECF No. 523.

Mr. Wyche asks this Court to reduce his sentence to 10 years, in order that the remaining time he has spent incarcerated—more than 20 years—may be credited toward a consecutive 20-year sentence to be served in Maryland upon his release from federal custody for a 1989 guilty

---

[1] In the Circuit's most recent decision on Mr. Wyche's case, the Circuit stated that on remand the sentencing court recalculated Mr. Wyche's total offense level to be 41. *Id.* at 1289. On direct appeal, Mr. Wyche had argued—and the Circuit rejected—that the sentencing court improperly applied a two-level enhancement for restraint of a victim. *See Harris*, 959 F.2d at 265. On his appeal after the remand, the Circuit stated that "even without the two-level enhancement" at issue on Mr. Wyche's direct appeal, the removal of which would reduce his total offense level to 41, "the sentencing range governing [Mr. Wyche's] sentence would be the same—360 months to life." Thus, "[b]ecause the district court imposed the maximum sentence on both occasions, it is clear that the same sentence would be imposed under either offense level." *United States v. Wyche*, No. 93-3003, 1993 WL 478952, *1 (D.C. Cir. Nov. 12, 1993) (per curiam).

plea to possession with intent to distribute cocaine. *See* Def.'s 2d Suppl. Mot. at 2, n.1; Def's CR

Mot. at 38. In the alternative, Mr. Wyche asks this Court to reduce his sentence to 25 years'

incarceration, "thus creating [several] years of credit for time served such to effectuate parole

eligibility and the prospect of immediate release." Def.'s CR Mot. at 32 n.101.[2]

The government opposed. *See* Gov't Opp'n to Def.'s 2d Suppl. Mot. The government

agrees that Mr. Wyche is eligible for a sentence reduction under the First Step Act but urges the

Court not to reduce his sentence due to Mr. Wyche's criminal history and post-sentencing

conduct, the need for deterrence, and other factors. *Id.* at 1. Like Mr. Wyche, the government

references its opposition to Mr. Wyche's compassionate release motion in its First Step

oppositions. *See, e.g.*, Gov't Opp'n to Def.'s 2d Suppl. Mot. at 11 n.9 (citing Gov't Opp'n to

Def.'s CR Mot., ECF No. 521). Therefore, the Court will consider arguments raised in both

motions, as well as Mr. Wyche's replies, for the purpose of ruling on the instant motion. *See*

*Tunica-Biloxi Tribe of La. v. United States*, 577 F. Supp. 2d 382, 426 n.22 (D.D.C. 2008).

In July 2022, this Court reserved ruling on Mr. Wyche's motion pending supplemental

briefing from the parties in light of the Supreme Court's decision in *Concepcion*. Order (July 8,

2022), ECF No. 540. Consistent with this Court's order, the parties submitted their supplemental

briefing. *See* Gov't's *Concepcion* Suppl. Br., ECF No. 546; Def.'s *Concepcion* Suppl. Br., ECF

No. 547. Mr. Wyche has served more than 33 and a half years in prison and is now incarcerated

at USP Lewisburg.[3]

---

[2] Under Maryland law, an inmate becomes eligible for parole once they have served 6 months and aggregate one-fourth of their sentence for non-violent crimes. *See* Md. Code Ann., Corr. Serv. § 7-301(a)(1)(i)–(ii) (West 2022). Mr. Wyche's Maryland conviction is not a crime of violence under Maryland law. *See* Md. Code Ann., Crim. L. § 14-101(a) (West 2022). Thus, because Mr. Wyche received a 20-year sentence in Maryland, he would be eligible for parole after serving—or receiving overserved credit time for—5 years.

[3] As of September 21, 2020, Mr. Wyche had served 31 years, 6 months, and 19 days in prison. *See* Bureau of Prisons Sentence Computation Data, Ex. A to Gov't Opp'n to Def.'s CR Mot., ECF No. 521-1.

## II.    LEGAL STANDARD

"For nearly 25 years, federal criminal law punished offenses involving crack cocaine far more harshly than offenses involving powder cocaine." *United States v. Lawrence*, 1 F.4th 40, 42 (D.C. Cir. 2021). In 2010, "[a]fter two decades of criticism, Congress reduced, but did not eliminate, the crack-to-powder disparity in the Fair Sentencing Act," by "reduc[ing] the disparity between cocaine base and powder cocaine from 100-to-1 to 18-to-1," *id.* (internal citations omitted). Specifically, Section 2 of the Act increased the threshold drug amounts required to trigger mandatory minimum sentences for crack offenses. 124 Stat. at 2372 § 2. Before the Act, possessing 50 grams of crack cocaine triggered a ten-year mandatory minimum. *Id.* The Act increased that threshold to 280 grams. *Id.* Likewise, the 5-gram threshold that previously triggered a five-year mandatory minimum was increased to 28 grams. *Id.* Those revisions initially did not apply to defendants sentenced before August 3, 2010, the date of the Fair Sentencing Act's enactment. *See United States v. Swangin*, 726 F.3d 205, 208 (D.C. Cir. 2013). Eight years later, Congress passed the First Step Act of 2018. 132 Stat. at 5194. Section 404 of the First Step Act, which made retroactive the Fair Sentencing Act's modifications, "allows district courts to consider intervening changes of law or fact in exercising their discretion to reduce a sentence pursuant to the First Step Act," so long as they "explain their decisions and demonstrate that they considered the parties' arguments." *Concepcion*, 142 S. Ct. at 2404.

In considering Mr. Wyche's motion, the Court follows the Circuit's instruction in *United States v. White*, 984 F.3d 76 (D.C. Cir. 2020). *See United States v. Palmer*, 35 F.4th 841, 850 (D.C. Cir. 2022) ("*White* provides our Circuit's framework to evaluate First Step Act motions"). The two-step process for ruling on a First Step Act motion is the following:

> First, under section 404(a), the court must determine whether a defendant is eligible for relief—that is, whether the movant committed a "covered offense,"

6

defined as "a violation of a Federal criminal statute, the statutory penalties for
which were modified by section 2 or 3 of the Fair Sentencing Act of 2010 . . .,
that was committed before August 3, 2010." First Step Act § 404(a), 132 Stat. at
5222. . . .

Second, under section 404(b), a "court that imposed a sentence for a covered
offense may . . . impose a reduced sentence as if sections 2 and 3 of the Fair
Sentencing Act . . . were in effect at the time the covered offense was committed."
First Step Act § 404(b), 132 Stat. at 5222. Put simply, once a defendant is
considered eligible, the district court exercises its "broad discretion" to decide
"whether it *should* reduce the sentence." *White*, 984 F.3d at 88 (quoting *United
States v. Hudson*, 967 F.3d 605, 610 (7th Cir. 2020)); *see also* First Step Act
§ 404(c) ("Nothing in this section shall be construed to require a court to reduce
any sentence pursuant to this section."), 132 Stat. at 5222.

*Id.*

### III.   DISCUSSION

#### A.   Mr. Wyche Is Eligible for Resentencing Under the First Step Act

The parties agree that Mr. Wyche is eligible for resentencing under the First Step Act.

Mr. Wyche was sentenced to life in prison for his convictions of Count 1, conspiracy to

distribute and possess with the intent to distribute cocaine and cocaine base, in violation of 21

U.S.C. §§ 841(a) & 846, and Count 4, use of juveniles in drug trafficking in violation of 21

U.S.C. § 845b.[4] *See Wyche*, 741 F.3d at 1289. At the time of his sentencing, violations of 21

U.S.C. § 841(a) & 846 involving 50 grams or more of cocaine base carried a mandatory

minimum sentence of ten years in prison and possibility of life. *See* 21 U.S.C.

§ 841(b)(1)(A)(1989); *White*, 984 F.3d at 83. Section 2(a) of the Fair Sentencing Act increased

the threshold quantity in 21 U.S.C. § 841(b)(1)(A) necessary to trigger certain mandatory

minimum penalties. *See* 124 Stat. at 2372. With the retroactive application of the Fair Sentencing

Act through the First Step Act, 280 grams—rather than 50 grams—of cocaine base became the

---

[4] 21 U.S.C. § 845b has since been transferred to 21 U.S.C. § 861. *See* Crime Control Act of 1990, Pub. L. No. 101-
647, § 1002(c), 104 Stat. 4827; *United States v. Brown*, 16 F.3d 423, 426 n.3 (D.C. Cir. 1994).

quantity necessary to trigger a mandatory minimum sentence of ten years' incarceration and a

maximum life sentence under 21 U.S.C. § 841(b)(1)(A). *See* 124 Stat. at 2372.

Because Mr. Wyche's statute of conviction was modified by the First Step Act, and his

offense occurred prior to August 3, 2010, he committed a covered offense and is thus eligible for

relief under Section 404.

### B. This Court Will Exercise Its Discretion to Reduce Mr. Wyche's Sentence

A "district court may consider all relevant factors when determining whether an eligible

defendant merits relief under the First Step Act." *Palmer*, 35 F.4th at 851 (quoting *White*, 984

F.3d at 90).  Some important factors to consider are: "new statutory minimum or maximum

penalties; current Guidelines; post-sentencing conduct; and other relevant information about a

defendant's history and conduct," to ensure that a sentence is "sufficient, but not greater than

necessary, to fulfill the purposes of [18 U.S.C.] § 3553(a)." *Id.* (quoting *White*, 984 F.3d at 90).

*See also Concepcion*, 142 S. Ct. at 2396 (affirming that courts "may consider other intervening

changes of law (such as changes to the Sentencing Guidelines) or changes of facts (such as

behavior in prison) in adjudicating a First Step Act motion" and are "obligated to consider

nonfrivolous arguments presented by the parties" but are "not compel[led] . . . to exercise their

discretion to reduce any sentence based on those arguments").

The Court begins by addressing the new statutory minimum or maximum penalties and

current Guidelines, before applying the relevant sentencing factors listed in 18 U.S.C. § 3553(a).

### 1. New Statutory Minimum or Maximum Penalties

Even though the First Step Act modified Mr. Wyche's statute of conviction, the facts of

his case indicate that, were he to be sentenced today, he would still face the same minimum and

maximum penalties. As previously discussed, the Fair Sentencing Act's modification of Mr.

Wyche's original statute of conviction resulted in new statutory maximum and minimum

8

penalties for his conviction on Count 1. The Fair Sentencing Act raised the threshold quantity required to trigger the same minimum (10 years' incarceration) and maximum (life imprisonment) penalties for Mr. Wyche's statute of conviction. *See* 21 U.S.C. § 841(b)(1)(A). In Mr. Wyche's case, the jury made no findings on quantity, but the PSR attributed approximately 31 kilograms to him. *See Wyche*, 741 F.3d at 1294. Thus, if a jury convicted Mr. Wyche of conspiracy to possess with intent to distribute at least 280 grams today, he would face the same statutory minimum and maximum sentences—ten years and life, respectively. Examination of the new statutory minimum or maximum penalties, or lack thereof in Mr. Wyche's case, weighs against reducing his sentence.

### 2. Current Sentencing Guidelines Range

Similarly, as the government notes, if Mr. Wyche were sentenced today, he would still face a recommended sentence of life imprisonment under the Sentencing Guidelines. Gov't Opp'n, to Def.'s 2d Suppl. Mot at 13. Because the conspiracy involved 31 kilograms, as determined by the PSR and Circuit, *see Wyche*, 741 F.3d at 1294, Mr. Wyche's current base offense level is 38. U.S.S.G., § 2D1.1(c). With the applicable enhancements, his total offense level would be 43. Gov't Opp'n to Def.'s 2d Suppl. Mot at 13. Under the current Guidelines, with a criminal history of V, Mr. Wyche's recommended Guidelines sentence would be life imprisonment. *See* U.S.S.G. Manual, ch. 5, Part A (2021).

Because Mr. Wyche still faces a Guidelines recommendation of life, the government argues that the Court *should not* reduce Mr. Wyche's sentence. According to the government, a sentence reduction in this scenario would create a "windfall" for Mr. Wyche. Gov't Opp'n to Def.'s 2d Suppl. Mot. at 12. The Court finds this argument unpersuasive, primarily because the Supreme Court already dismissed it in *Concepcion.* 142 S. Ct at 2403 n.8 ("disparities are always

unavoidable when some, but not all, defendants are permitted to move for modifications of an original sentence").

Perhaps anticipating the Court's reluctance to accept its argument, the government also suggests that the Court *cannot* reduce Mr. Wyche's sentence below the Guidelines recommendation of life because Mr. Wyche has not provided substantial assistance warranting the significant downward departure. Gov't Opp'n to Def.'s 2d Suppl. Mot. at 14 (citing U.S.S.G. § 1B1.10). But this argument is belied by the government's own concession that "[Section] 404 of the First Step Act does not state any such limitation" on this Court's discretionary sentencing power. *Id.* Moreover, as the government is well aware, "[f]rom the beginning of the Republic, federal judges were entrusted with wide sentencing discretion" and "[t]hat discretion also carries forward to later proceedings that may modify an original sentence." *Concepcion*, 142 S. Ct. at 2398. The consistent Guidelines recommendation of life is another factor suggesting against a sentence reduction, but not a determinative one.

### 3. Remaining 18 U.S.C. 3553(a) Factors

The Court will next address the relevant Section 3553(a) factors, including the nature and circumstances of the offense, Mr. Wyche's history and characteristics, Mr. Wyche's post-sentencing conduct, the need to avoid unwarranted sentencing disparities, and the need for the sentence imposed. *See* 18 U.S.C. § 3553(a)(1)–(2), (6). As the Supreme Court recently reiterated, in conducting a Section 3553(a) analysis, "a district court is [not] required to articulate anything more than a brief statement of reasons," *Concepcion*, 142 S. Ct. at 2404, and the First Step Act does not "require a district court to make a point-by-point rebuttal of the parties' arguments," *id.* at 2405. *See Palmer*, 35 F.4th at 853 ("there is no requirement that sentencing courts expressly

list or discuss every Section 3553(a) factor") (citing *United States v. Knight*, 824 F.3d 1105,

1110 (D.C. Cir. 2016)).

     *a.   Nature and Circumstances of the Offense*

     As the sentencing judge recounted, Mr. Wyche was a "principal member of the

. . . conspiracy and a major participant in all the activities of the . . . conspiracy." *Wyche*, 741

F.3d at 1294 (internal quotations and citation omitted). In his role, Mr. Wyche "controlled the

cocaine flow to several workers and collected money from drug sales" and in his position "he

himself made as much as $5,000 a day from the drug trade." *Harris*, 959 F.2d at 320. Some of

the individuals Mr. Wyche supervised in the drug trade were under the age of eighteen. *Id.* Not

only did the conspiracy traffic in illegal drugs, the organization "employ[ed] firearms to

intimidate the competition and to protect the operation against the police," even going so far as

to restrain and beat a competitor for a week. *Id.* at 303, 319.

     Consistent with the Circuit's instruction that this Court "may consider both judge-found

and jury-found drug quantities as part of its exercise of discretion" under the First Step Act, this

Court will consider the quantity involved in Mr. Wyche's offense. *White*, 984 F.3d at 88. As

previously discussed, the PSR determined, and the sentencing judge considered, that during Mr.

Wyche's tenure as a member of the conspiracy, the drug operation handled a total of

approximately 31 kilograms of crack cocaine. *Wyche*, 741 F.3d at 1294. This quantity is more

than 100 times greater than the quantity of crack cocaine required to impose a life sentence after

the Fair Sentencing Act and First Step Act. *See* 21 U.S.C. 841(b)(1)(A).

     The Court recognizes the severity of Mr. Wyche's crimes and the severity of Mr.

Wyche's sentence. The nature and circumstances of Mr. Wyche's convictions weigh against a

sentence reduction. However, on balance, the other Section 3553(a) factors convince this Court

that a sentence reduction is appropriate in this circumstance.

### b.  History and Characteristics of the Defendant

The government argues that this Court should not reduce Mr. Wyche's sentence because

his criminal history indicates that he still poses a danger to society. Gov't Opp'n to Def.'s CR

Mot. at 19. The offenses for which Mr. Wyche was convicted in this Court were not his first

brush with the law. In fact, Mr. Wyche committed his crimes in Washington, D.C. while he was

on parole for a 1978 robbery and weapons case in New York. Gov't Opp'n to Def.'s Suppl. Mot.

at 11 (citing PSR ¶ 48). And Mr. Wyche still faces a 20-year sentence in Maryland for a related

drug crime.

While his criminal record is certainly troubling, Mr. Wyche's age and poor health offer

significant counterpoints to the government's assertions that releasing him would endanger the

community. At nearly seventy years old, Mr. Wyche is a cancer survivor and suffers from

numerous health conditions, including obesity, asthma, hypertension, and prediabetes. Def.'s CR

Mot. at 6. Those factors standing alone would not be sufficient without the additional evidence

presented here demonstrating that Mr. Wyche's condition is deteriorating: just this year, he

suffered a pulmonary embolism, becomes out of breath while resting, and was diagnosed with

heart failure. Def.'s *Concepcion* Suppl. Br. at 4–5. Additionally, statistical evidence from the

United States Sentencing Commission indicates that formerly incarcerated people released at an

age similar to Mr. Wyche exhibit the lowest rates of rearrest, reconviction, and reincarceration,

even without similar health complications. *See* Def.'s CR Mot. at 35 (citing U.S. SENTENCING

COMM'N, THE EFFECTS OF AGING ON RECIDIVISM AMONG FEDERAL OFFENDERS (2017)). Mr.

Wyche's age and failing health, alongside the statistics, do much to assuage this Court of the government's public safety concerns.

The Court previously determined that neither Mr. Wyche's age nor health conditions established an extraordinary or compelling reason warranting release in the context of a motion for compassionate release. *See Wyche*, 2022 WL 2643568, at *3 (denying compassionate release). However, determining what is an extraordinary or compelling reason warranting compassionate release and determining what is an appropriate sentence under the Section 3553(a) factors are entirely different inquiries. Sentencing judges routinely consider a host of characteristics that are not at all extraordinary—including old age and failing health—when imposing a sentence in the first instance. There is no reason the same should not be true for purposes of a First Step Act motion. Moreover, Mr. Wyche's condition has further deteriorated since the time of his compassionate release motion. *See* Def.'s *Concepcion* Suppl. Br. at 4. Here, Mr. Wyche's age and health conditions inform who Mr. Wyche is today and his diminished danger to the community, which are primary purposes of the 18 U.S.C. § 3553(a)(1) inquiry. Given the circumstances here, this factor favors a sentence reduction.

   c.   *Defendant's Post-Sentencing Conduct*

As the Supreme Court has instructed, "in deciding whether to grant First Step Act motions and in deciding how much to reduce sentences," district courts may "look[ ] to postsentencing evidence of violence or prison infractions as probative." *Concepcion*, 142 S. Ct. at 2403; *see also Pepper v. United States*, 562 U.S. 476, 491 (2011) ("[E]vidence of postsentencing rehabilitation may be highly relevant to several of the § 3553(a) factors that Congress has expressly instructed district courts to consider at sentencing."). In fact, in this District, post-sentencing conduct "is given substantial weight." *See United States v. White*, No.

93-cr-97 (BAH), 2022 WL 3646614, *22 (D.D.C. Aug. 24, 2022). In evaluating a defendant's

post-sentencing conduct, the Court considers the defendant as he appears today, "not on the date

of his offense or the date of his conviction." *Concepcion*, 142 S. Ct. at 2396.

The letters submitted on behalf of Mr. Wyche demonstrate his strong work ethic and trust

that the prison has placed in him. According to his work supervisor, USP Lewisburg Cook

Supervisor Melissa Shilo, Mr. Wyche "exemplifie[s] extraordinary work ethic" and has become

"instrumental in the day to day operations of food service." Shilo Letter., Ex. G to Def.'s CR

Mot., ECF No. 517-2, at 61–62. Mr. Wyche's demonstrated track record of consistency and

dependability in food service resulted in his promotion to employment in the officer's mess hall,

which Mr. Wyche's former fellow inmate Mr. Timothy Whaley describes as "one of the most

prestigious jobs to work in prison." Whaley Letter, Ex. O to Def.'s CR Mot., ECF No. 517-2, at

132–33. Mr. Wyche has held his position in the officer's mess hall for more than a decade. *Id.*

Furthermore, Mr. Wyche earned the respect of Bureau of Prisons officials, such that his

recommendations hold influence with prison's allocation of work assignments; as Mr. Whaley

recounts, he was added to the staff for the officer's mess hall upon Mr. Wyche's

recommendation. *Id.* The Bureau of Prisons concludes that inmates with a work history such as

Mr. Wyche's have extremely low recidivism rates. *See* WILLIAM G. SAYLOR & GERALD G. GAES,

U.S. FED. BUREAU OF PRISONS, PREP: TRAINING INMATES THROUGH INDUSTRIAL WORK

PARTICIPATION, AND VOCATIONAL AND APPRENTICESHIP INSTRUCTION (1996), at 9–10.

Along with Mr. Wyche's diligence in his work assignments, he has engaged in a number

of educational programming opportunities during his incarceration. Mr. Wyche received his

GED, enrolled in college classes, and participated in programming on diverse topics such as

parenting, psychology, music, screenplay, and Spanish. Inmate Skills Dev. Plan (2020), Ex. F to

Def.'s CR Mot., ECF No. 517-2, at 50–60. The government argues that Mr. Wyche's programming activities "show little effort with respect to rehabilitation" especially since he enrolled in only a handful of vocational courses. Gov't Opp'n to Def.'s 2d Suppl. Mot. at 15–16. But as Mr. Wyche correctly points out, the government does not offer specific programming opportunities in which Mr. Wyche could or should have participated, especially considering his age, physical limitations, and the curtailment of programming as a result of the COVID-19 pandemic. Def.'s Reply to Gov't Opp'n to Def.'s 2d Suppl. Mot. at 3. Regardless, the activities that Mr. Wyche did participate in—namely his work in food service and his achievement of the ServSafe certification—greatly increase his likelihood of securing employment upon release. *See* Ex. F to Def.'s CR Mot.

Mr. Wyche's disciplinary record has been spotless for the last two decades. *See* Def.'s CR Mot. at 27; Inmate Skills Dev. Plan (2015), Ex. L to Def.'s CR Mot., ECF No. 517-2, at 106 (noting that his last disciplinary infraction was in 1999). The government looks to Mr. Wyche's six earlier disciplinary infractions during his incarceration and argues that these infractions weigh against his release. *See* Gov't Opp'n to Def.'s 2d Suppl. Mot. at 15. Mr. Wyche's disciplinary history includes the following: three Level 100 infractions—possessing a dangerous weapon (in 1993), use of drugs/alcohol (in 1998), and introduction of drugs/alcohol (in 1999)—one Level 200 infraction—fighting with another person (in 1995)—and two Level 100 infractions—refusing to obey an order and being insolent to a staff member (both in 1994). Ex. L to Def.'s CR Mot. It is troubling that half of Mr. Wyche's offenses, and the three most recent, were classified by the Bureau of Prisons as Level 100, or the "greatest severity." Nevertheless, the Court is satisfied that Mr. Wyche's track record of more than two decades without a disciplinary infraction, of any level, is more compelling evidence of his changed character.

Mr. Wyche has also maintained positive relationships with others. Mr. Whaley describes Mr. Wyche as his "mentor," saying that Mr. Wyche "made it paramount that I understand the importance of changing my life for the better" and that Mr. Wyche is "a model inmate who has constantly been an influence for younger men in prison that promotes self awareness, accountability, and productivity at most." Whaley Letter. Mr. Wyche still has close relationships with his goddaughters, *see* Def.'s CR Mot. at 26, and his romantic partner, Ms. Diane Webb, *id.* at 29. In addition to maintaining close bonds with family members and building relationships with fellow inmates, Mr. Wyche forged relationships with members of the public. *See, e.g.*, Amir Letter, Ex. N to Def.'s CR Mot., ECF No. 517-2, at 130–31.

Finally, Mr. Wyche submitted a release plan. Upon release, Mr. Wyche plans to live with his goddaughter, Ms. Ayana Webb, in Washington, D.C. *See* Webb Letter, Ex. M to Def.'s CR Mot., ECF No. 517-2, at 128–29. Ms. Webb has pledged to support Mr. Wyche financially as well as provide housing. *See id.* Mr. Whaley also offered to provide Mr. Wyche accommodation and employment at Mr. Whaley's self-owned trucking business, should Mr. Wyche need it. *See* Whaley Letter. In terms of other potential employment, Ms. Shilo believes that "[a]ll of the skills and traits that [Mr.] Wyche has acquired in Food service[ ] will be instrumental in his transition to a productive member of society" and offered to serve as a professional reference. *See* Shilo Letter. While it is unclear to what extent Mr. Wyche's poor health may limit his ability to pursue certain employment opportunities, offers from multiple individuals to support Mr. Wyche with finances and accommodation is a sufficient release plan, contrary to the government's assertion. *See* Gov't Opp'n to Def's CR Mot. at 22–23.

The letters submitted to the Court demonstrate the sincerity of Mr. Wyche's approach to his work responsibilities and the significant impact Mr. Wyche has had on individuals both

inside and outside of prison. His decades-long track record free of disciplinary violations underscores the letters' description of Mr. Wyche's positive attributes. Furthermore, Mr. Wyche has maintained strong emotional bonds with family members and friends who are willing to support him, should he be released. The Court finds that, on balance, Mr. Wyche's post-sentencing conduct suggests that he would contribute constructively to his community if released.

### d.  Need to Avoid Unwarranted Sentence Disparities

A reduction in Mr. Wyche's sentence is warranted to avoid sentencing disparities with co-defendants in his case as well as other similarly situated defendants in this District.

As Mr. Wyche observes, Palmer, the leader of the conspiracy, is the only co-defendant other than Mr. Wyche still incarcerated. *See* Def.'s CR Mot. at 13. Mr. Wyche's motion focuses on two of his co-defendants, Lamar Harris and Richard Smith, to illustrate how he is currently experiencing a sentencing disparity. *Id.* Mr. Wyche, Harris, and Smith were all originally sentenced to life imprisonment for their participation in the conspiracy. *Id.* Harris, who was Palmer's "right-hand man," as well as "a major figure in the drug distribution ring" "personally used guns and actual violence to further his business," including one time where he "was going to shoot somebody, but the gun jammed," and another instance where he likely "placed [an] uzi in the mouth" of a woman because she permitted rival dealers to use her apartment. *Id.* at 17 (citing Mem. Op. & Order, *United States v. Harris*, No. 89-cr-36-2 (BAH) (D.D.C. July 7, 2017), ECF No. 460, at 2). Smith, like Mr. Wyche, was considered to be a "principal lieutenant[ ]" of the organization. *See Wyche*, 741 F.3d at 1290.

Harris moved for and received a sentence reduction based on retroactive changes to the Guidelines. Def.'s CR Mot. at 13. In 2007, the Sentencing Commission reduced the penalty recommendation applicable to offenses involving crack cocaine. *See id.* at 14. As a result,

Harris's new total offense level was 37 and he had a criminal history category of II. *See* Harris

Mot., *United States v. Harris*, Cr. No. 89-cr-36-2 (RMU) (D.D.C. Oct. 1, 2009), ECF No. 315, at

4. In 2009, the Court reduced Harris's life sentence to 325 months, or just over 27 years. *See*

Order, *United States v. Harris*, No. 89-cr-36-2 (RMU) (D.D.C. Oct. 20, 2009), ECF No. 319.

Harris served the remainder of his time and was released from prison in 2012. *See* Def.'s CR

Mot. at 13.

Smith successfully moved for a sentence reduction two separate times. After the 2007

changes to the crack cocaine penalty recommendations, Smith's new offense level became 37,

and he, like Mr. Wyche, had a criminal history category of V. Smith Mot., *United States v.*

*Smith*, No. 89-cr-36-3 (RMU) (D.D.C. June 5, 2008), ECF No. 302, at 5. In 2008, the Court

reduced Smith's sentence to 405 months, or just over 33 years. *See* Order, *United States v. Smith*,

No. 89-cr-36-3 (RMU) (D.D.C. Sept. 18, 2008), ECF No. 308. In 2015, Smith again moved to

reduce his sentence, this time under the 2014 Amendment 782 to the Guidelines, which lowered

his total offense level to 35. *See* Smith Am. 782 Mot., *United States v. Smith*, No. 89-cr-36-3

(ESH) (D.D.C. Aug. 13, 2015), ECF No. 434. In 2016, the Court further reduced Smith's

sentence to 370 months, or just under 31 years. *See* Order, *United States v. Smith*, No. 89-cr-36-3

(ESH) (D.D.C. March 31, 2016), ECF No. 440. Smith was released from prison in 2016. *See*

Def.'s CR Mot. at 13.

This Court previously found that potential sentencing disparities between Mr. Wyche,

Harris, and Smith did not constitute an extraordinary or compelling reason for his own sentence

reduction, as required by 18 U.S.C. § 3582(c)(2). *See Wyche*, 2022 WL 2643568, at *6. But that

is, once again, a different inquiry, and such a disparity *is* a reason militating in favor of Mr.

Wyche's release under an 18 U.S.C. § 3553(a) analysis. Harris, the second-most culpable

member of the conspiracy, and Smith, equally culpable to Mr. Wyche in the conspiracy and with the same criminal history, received reduced sentences and are no longer incarcerated. The Court recognizes that Smith, Mr. Wyche's closest analog in the conspiracy, had a lower adjusted offense level and was resentenced to a shorter sentence than the one the Court imposes today. Yet Mr. Wyche has already served eight more years in prison that Smith, a term that this Court finds more than offsets the difference in Guidelines calculations.[5]

Reducing Mr. Wyche's sentence is also necessary to create consistency with defendants who received sentence reductions from other courts in this District. In August of this year, Chief Judge Howell granted First Step Act relief to two defendants, Antone White and Eric Hicks, reducing their original life sentences. *See White*, 2022 WL 3646614, at *1. Like Mr. Wyche, both White and Hicks participated in a large-scale crack cocaine distribution conspiracy in Washington, D.C. in the late 1980s, were found guilty of conspiracy to distribute and possess with intent to distribute cocaine base in violation of 21 U.S.C. §§ 846 & 841, among other charges, and were sentenced to life in prison. *Id.* at *4–*5. Chief Judge Howell reduced their original life sentences to 35 and 33 years, respectively. *Id.* at *12–*14.

Mr. Wyche's case presents even more compelling factors weighing in favor of a sentence reduction. Most importantly, Mr. Wyche's criminal history differs significantly from White and Hicks. Chief Judge Howell noted that White and Hicks were "kingpins in the drug trade," who had engaged in "obstructive conduct" that "was designed to undermine the operation of the criminal justice system," as well as "violent conduct, including murders." *Id.* at *13, *14.

---

[5] According to the most recent version of the Guidelines, the sentence range for a defendant with a total offense level of 35 and criminal history category of V (like Smith) is 262–327 months and the sentence range for a defendant with a total offense level of 41 and criminal history category of V (like Mr. Wyche, as the Circuit calculated in its most recent opinion) is 360 months–life. *See* U.S.S.G. Manual, ch. 5, Part A (2021). Comparing the higher end of the first range and the lower end of the second range results in a difference of fewer than three years.

Though Mr. Wyche used firearms to carry out his criminal activity, he was never implicated in violent activities on the order of White or Hicks. *See* Def.'s *Concepcion* Suppl. Br. at 4. Moreover, those defendants—and White in particular—had troubling post-sentencing disciplinary histories. As discussed above, Mr. Wyche was cited for 6 infractions over the course of more than 30 years, with the last infraction occurring in 1999. White, on the other hand, engaged in 29 disciplinary infractions, with the most recent infraction occurring in 2015. *See White*, 2022 WL 3646614, at *19. Nearly a third of White's infractions involved weapons, violence, or threats to commit violence. *Id.* Hicks, while engaging in fewer violations than Mr. Wyche, committed his last violation a decade after Mr. Wyche's last violation. *Id.*

Any concern about this Court's decision to reduce Mr. Wyche's sentence to 28 years, when White and Hicks received reductions to 35 and 33 years, can be mitigated based on clear factual distinctions between the cases. Mr. Wyche's crimes did not involve violence like Hicks or White. Mr. Wyche has already served more time than Hicks. And, Mr. Wyche spent five more years in prison than either White or Hicks before moving for relief under the First Step Act. *See White*, 2022 WL 3646614, at *1. These factual distinctions convince the Court that Mr. Wyche's sentence reduction is appropriate.

Reducing Mr. Wyche's sentence also maintains consistency with the sentence reductions Judge Hogan granted to Kevin Williams-Davis and McKinley Board, upon which Chief Judge Howell relied when reducing the sentences of White and Hicks. Williams-Davis was a leader and Board was a lieutenant in "an eight-year, multi-million dollar drug operation in northeast Washington, D.C.," *White*, 2022 WL 3646614, at *22 (internal quotations and citation omitted), moving more than 300,000 kilograms of marijuana, not to mention other illicit substances, between 1983 and 1991. *See* Mot. to Reduce Sentence, *United States v. Board*, No. 91-cr-559-11

(TFH), ECF No. 2331, at 8 (quoting Board Sentencing Tr. 8:1-6 (Mar. 10, 1994), ECF No. 1493). Both Williams-Davis and Board were convicted of 17 counts—including two counts of second-degree murder for Williams-Davis—and sentenced to life. *See* Mot. to Reduce Sentence, *United States v. Williams-Davis*, No. 91-cr-559-1 (TFH), ECF No. 2365, at 13–14; Board Mot. to Reduce Sentence at 8–9.

Both Williams-Davis and Board moved for sentence reductions and Judge Hogan, focusing on their post-sentencing conduct, reduced their sentences to time-served. *See White*, 2022 WL 3646614, at *22. Williams-Davis's life sentence was reduced to approximately 30 years' incarceration and Board's life sentence was reduced to approximately 28 years. *See* Order, *United States v. Williams-Davis*, No. 91-cr-559-1 (TFH), ECF No. 2376; Order, *United States v. Board*, No. 91-cr-559-11 (TFH), ECF No. 2344.

A comparison of Mr. Wyche's criminal history and post-sentencing conduct with those of Williams-Davis and Board further indicates to this Court that a sentence reduction is warranted in this case. Mr. Wyche participated in his drug conspiracy for a little more than a year while Williams-Davis and Board were active members in a conspiracy that lasted eight years. Most critically, Mr. Wyche was not convicted of any violent crimes, let alone murder, unlike Williams-Davis. Moreover, Mr. Wyche's post-sentencing conduct bears strong similarities to the positive qualities Williams-Davis and Board exhibited. Like Williams-Davis, Bureau of Prisons officials praised Mr. Wyche for his strong work ethic and example to other inmates. *See White*, 2022 WL 3646614, at *22. Additionally, like Board, Mr. Wyche's disciplinary history is largely unblemished. *Id.* Taking the differences in Mr. Wyche's criminal history as compared to Williams-Davis and Board together with the similarities between the post-sentencing conduct exhibited by all three, the Court finds it appropriate to reduce Mr. Wyche's sentence.

*e.  Need for the Sentence Imposed*

As the sentencing judge noted, the two primary purposes of Mr. Wyche's sentence were

punishment and deterrence. *See* Def.'s CR Mot. at 33. This Court is satisfied that both purposes

may still be served with a reduced sentence. The more than three decades Mr. Wyche has been

incarcerated, combined with his specific health declines, has greatly reduced his overall life

expectancy. *See* DEP'T OF JUST., OFF. OF INSP. GEN., THE IMPACT OF AN AGING INMATE

POPULATION ON THE FEDERAL BUREAU OF PRISONS (2016), at 1–2. The significant time spent

incarcerated and separated from the outside world, including his goddaughters and partner,

appears to be adequate punishment for Mr. Wyche as well as deterrence both to him and others.

### 4.  Mr. Wyche's Pending Consecutive Sentence in Maryland

Finally, the Court addresses the impact of the reduction of Mr. Wyche's federal sentence

on his consecutive sentence in Maryland. Maryland law provides that "[a] defendant whose

sentence is set aside because of a direct or collateral attack and who is . . . resentenced for the

same crime . . . shall receive credit against and a reduction of the term . . . for all time spent in

custody under the prior sentence." Md. Code Ann., Crim. Proc. § 6-218(c) (West 2022); *see also*

*United States v. Brawner*, No. 09-cr-182 (DKC), 2020 WL 1929442, at *3 (D. Md. Apr. 21,

2020). As a Maryland appellate court has stated, both the text and legislative intent of Section 6-

218 "require that credit be given for time served regardless of the state(s) of confinement."

*Fenton v. State*, No. 1111, 2018 WL 2446973, at *6 (Md. Ct. Spec. App. May 30, 2018). Mr.

Wyche's counsel represents that the Chair of the Maryland Parole Commission has confirmed

that any overserved time on his federal sentence may be credited toward his pending Maryland

state sentence. *See* Def.'s CR Mot. at 38–39.

Mr. Wyche argues that this Court should reduce Mr. Wyche's sentence to less than the time he has already served, so that any excess time spent incarcerated can be credited toward his outstanding Maryland sentence. *See id*. The government resists this on two fronts, neither of which are persuasive to this Court.

First, the government implies that a sentence reduction resulting in overserved time would impermissibly allow Mr. Wyche to "bank time" "against potential future incarceration" such as "violations committed by defendant while on supervised release in this case." *See* Gov't Opp'n to Def.'s CR Mot. at 1 n.1 (internal quotation marks and citation omitted). This characterization of Mr. Wyche's argument misses the mark. As Mr. Wyche notes, he seeks a sentence reduction here that would "allow him to credit time to his Maryland sentence for a crime he has *already committed*, rather than for some speculative future crime." Def.'s Reply to Gov't Opp'n to Def.'s CR Mot. at 14 (emphasis in original).

Second, the government insists that an action by this Court to reduce Mr. Wyche's sentence and make him immediately eligible for parole would offend the sovereignty of the Maryland state judicial system. *See* Gov't Opp'n to Def.'s CR Mot. at 1 n.1. The government primarily relies on two cases—*United States v. Ballard*, 6 F.3d 1502 (11th Cir. 1993) and *United States v. Mattea*, 895 F.3d 762 (D.C. Cir. 2018)—in support of this argument, both of which actually support Mr. Wyche's position.

In *Ballard*, the Eleventh Circuit acknowledged that "each sovereign is entitled to have the defendant serve its respective sentence," but nevertheless held that the district court's imposition of a federal sentence to run consecutively to the yet-to-be-imposed state sentence did not violate dual sovereignty, even though it restrained the state court's ability to impose a concurrent sentence. *See* 6 F.3d at 1509–10. Thus, as Mr. Wyche correctly points out, the case stands for a

23

proposition contrary to the one the government is arguing. Def.'s Reply to Gov't Opp'n to Def.'s CR Mot. at 16 & n.3. The universality of the holding in *Ballard* appears to be somewhat limited, given that it was based in part on the defendant's "blatant attempt to manipulate the federal and state sentencing courts" by committing a separate federal crime and pleading guilty while the trial for his state charge was pending, thereby "attempting to coordinate his federal and state sentences so that they would be served concurrently in federal prison." 6 F.3d at 1510. Regardless, Mr. Wyche's case presents even less of a dual sovereignty concern than *Ballard* because Mr. Wyche was already convicted and sentenced by the Maryland state court. The government's reference to cases ruling that one federal district court lacked authority to impose a sentence to run consecutively to a future, yet-to-be-determined sentence by another federal district court are unavailing for the same reason: Maryland has already imposed its sentence. *See* Gov't Opp'n to Def.'s CR Mot. at 1–2 n.1 (citing *United States v. Montes-Ruiz*, 745 F.3d 1286, 1292–93 (9th Cir. 2014), *United States v. Quintana-Gomez*, 521 F.3d 495, 497 (5th Cir. 2008), and *United States v. Smith*, 472 F.3d 222, 227 (4th Cir. 2006)).

The government's citation to in-circuit precedent is not quite on-point. In *Mattea*, the defendant argued that the district court abused its discretion by imposing a harsher sentence for a child pornography conviction than other district courts had. *See* 895 F.3d at 763. The Circuit rejected the defendant's argument, unequivocally stating that the "factors that district courts must consider at sentencing are vague, open-ended, and conflicting" and "every sentencing decision involves its own set of facts and circumstances regarding the offense and the offender." *Id.* (quoting *United States v. Gardellini*, 545 F.3d 1089, 1093 (D.C. Cir. 2008)). This case bears little relevance to the question of a federal re-sentencing's impact on a pending state sentence.

This Court reduces Mr. Wyche's sentence to 28 years, a number the Court reached by examining sentence reductions granted to similarly-situated defendants in this District and re-analyzing the sentencing factors as applied to Mr. Wyche in light of 30 years of post-sentencing conduct. Because Mr. Wyche has already served more than 28 years in prison, the Maryland Parole Commission, consistent with Maryland state law, may credit his overserved time toward his outstanding Maryland sentence in determining his eligibility for parole in Maryland. Any "invasion" of the state court's sentencing province was by the Maryland legislature when it passed a statute allowing credited time, not by this Court today.

\* \* \*

"Nothing in the text and structure of the First Step Act expressly, or even implicitly, overcomes the established tradition of district courts' sentencing discretion." *Concepcion*, 142 S. Ct. at 2401. This Court, using its discretion, concludes that the 18 U.S.C. § 3553(a) sentencing factors demonstrate that the appropriateness of a sentence reduction for Mr. Wyche.

### IV.    CONCLUSION

Mr. Wyche is eligible for a reduced sentence under Section 404 of the First Step Act and this Court will exercise its discretion to reduce Mr. Wyche's sentence. His motion is accordingly **GRANTED IN PART**. His sentence for his conviction on Counts 1 and 4 is reduced from life imprisonment to 28 years. A separate and consistent Order shall issue this date.

SIGNED this _____ 9th _____ day of January, 2023.

_____
Royce C. Lamberth
United States District Judge

25